IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

APR 2 8 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 05-0126 (RMU) |
| v.  ) | |
| ) | Violation: |
| PATRICIA RAIKES ) | 18 U.S.C. §§ 209(a) and 216(a)(2) |
| ) | (Conflict of Interest) |

## FACTUAL BASIS FOR PLEA

The United States of America and the defendant, PATRICIA RAIKES, by and through counsel, stipulate to the following facts:

1. From on or about 1986 to 2004, defendant RAIKES was an employee of the United States Department of State, a department within the executive branch of the United States Government.

2. From on or about July 7, 1998 to on or about July 12, 2001 defendant RAIKES was a Foreign Service Officer assigned to the United States Embassy in Beirut, Lebanon.

3. As a Foreign Service Officer, defendant RAIKES served as the chief of the Embassy's Consular Section and was responsible for oversight of the full range of consular activities, including the issuance of visas and ensuring that established embassy regulations were properly followed.

4. One of the critical functions performed by the United States Embassy in Beirut was the awarding of United States tourist visas to qualified Lebanese citizens. At the time defendant RAIKES was the Consular Section Chief, the Embassy's policy was to not issue tourist visas to the general Lebanese public. Rather, the only persons who were to receive tourist visas had to be either 60 years of age or older, have received a visa in the past, or have been referred by an

American embassy employee due to a professional relationship that was beneficial to the United States Government. Those individuals who did not meet these criteria and who wished to obtain a tourist visa were to be referred to the United States Embassy in Damascus, Syria.

5. While assigned to Beirut post, defendant Raikes became friendly with a Lebanese-American businesswoman A.

6. In or about November 14, 1999, businesswoman A asked B, a Lebanese American businessman working in Las Vegas, Nevada, and a close friend of A's, to give defendant Raikes and defendant Raikes' daughter-in-law an all-expense paid trip from her home in Mason City, Iowa to Las Vegas for four nights. This trip package included round-trip air-fare for defendant Raikes and her daughter-in-law as well as hotel accommodations for them both at the MGM Grand Hotel in Las Vegas. Defendant Raikes was advised by A that the hotel room had been "comped." The round-trip airfare had an approximate value of $1500. While on this trip, defendant Raikes met and became friendly with businessman B and was also introduced by B to Lebanese-American businessman C.

7. In or about March 9, 2000, businessman B provided defendant Raikes with first-class round-trip air fare from Paris, France to Las Vegas, Nevada. Businessman B told Raikes that the event was a charitable event to raise money for the American University in Beirut. This trip package included two nights accommodations at the MGM Grand Hotel for defendant Raikes. Defendant was advised, once again, that the hotel accommodations had been "comped." The round-trip airfare cost $2400.

8. In or about September 7, 2000, defendant Raikes issued visas to 19 Lebanese individuals referred to her by businessman B. This group of 19 included 17 individuals who had never previously been granted United States visas and, according to United States Embassy

practice at that time, were ineligible to receive tourist visas under the then-existing post policy as described in paragraph 4, supra.

9. In or about December 28, 2000, businessman C provided defendant Raikes with round-trip airfare from Mason City, Iowa to Las Vegas Nevada for both her and defendant Raikes' mother, as well as hotel accommodations at Caesar's Palace for seven nights, although Defendant Raikes only stayed at the hotel for four to five nights. Defendant Raikes was advised by C that the rooms were "comped." The value of the airfare was approximately $1600.

10. In or about May 4, 2001, businessman C submitted to defendant Raikes visa applications for four Lebanese individuals who did not meet the post criteria for visa issuances (as described in paragraph 4, supra). Defendant Raikes approved all four applications.

11. Between in or about May 11 and May 22, 2001 defendant Raikes issued tourist visas to 15 Lebanese individuals referred to her by businesswoman A. Eleven of these 15 individuals had never previously applied or received United States visas and, according to United States Embassy practice at that time, were ineligible to receive tourist visas under the then-existing post policy described in paragraph 4, supra.

12. On September 19, 2002, defendant Raikes was interviewed by Diplomatic Security Service special agents and questioned about her relationships with A, B and C, and whether she had received any trips or other things of value from them. Defendant Raikes then acknowledged receiving rooms and airfare as outlined above.

IT IS SO STIPULATED on this 28th day of April, 2005.

| FOR THE DEFENDANT | FOR THE UNITED STATES |
|---|---|
| | NOEL L. HILLMAN<br>Chief, Public Integrity Section |
| *Patricia Raikes* | By: *Sabrina Houlton*<br>Peter R. Zeidenberg<br>Nicholas A. Marsh<br>Sabrina A. Houlton<br>Trial Attorneys<br>U.S. Department of Justice<br>Criminal Division<br>Public Integrity Section<br>1400 New York Avenue, N.W.<br>12th Floor<br>Washington, D.C. 20005<br>(202) 514-1412 |
| Patricia Raikes<br>Defendant | |
| *Michael Hannon* | |
| Michael Hannon<br>Counsel for Defendant | |